Hughes Tool Company (formerly Hughes Industries Company, Ltd.) v. Commissioner. Hughes Tool Company v. Commissioner.
Hughes Tool Co. v. Commissioner
Docket Nos. 103670, 106359.
United States Tax Court
1943 Tax Ct. Memo LEXIS 8; 2 T.C.M. (CCH) 1177; T.C.M. (RIA) 43540; December 30, 1943
*8 J. L. Lockett, Esq., for the petitioner. Frank B. Schlosser, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: These consolidated proceedings involve income tax deficiencies in the sum of $169,006.14 for the calendar year 1936 and $603,918.22 for the year 1937. The sole issue is whether the petitioner is entitled to a credit for the taxable years 1936 and 1937 in computing the surtax on its undistributed profits under section 26 (c) (1) of the Revenue Act of 1936. The cases were submitted on a formal stipulation of facts which we adopt as our findings of fact. The petitioner filed its respective tax returns for the years involved with the collector of internal revenue for the first district of Texas at Austin, Texas. It keept its books on an accrual basis. Findings of Fact The petitioner was incorporated in the State of Delaware October 7, 1929 under the name Hughes Industries Company, Ltd., changing its name to the HughesTool Company in November 1936. It owned all the capital stock of the Hughes Tool Corporation, which was incorporated in the State of Delaware on April 8, 1931, and which is hereinafter referred to as "Delaware". Delaware *9 in turn owned all the capital stock of the Hughes Tool Company, which was incorporated in the State of Texas on January 29, 1913. This last corporation will be referred to as "Texas". Texas in turn owned all the capital stock of the Hughes Tool Company of California. The petitioner also owned the capital stock of the Independent Film Laboratories, Ltd., organized March 2, 1933, and Hughes Products, Ltd., organized September 21, 1933. These two corporations were organized in California and have only historical importance here. On October 1, 1935, Texas borrowed the sum of $1,000,000 from certain banks and, as consideration therefor, executed and delivered its 100 promissory notes, each for the principal sum of $10,000, payable to bearer and maturing serially at the rate of $100,000 each quarter beginning January 1, 1936. Each of these notes contained the following provisions: Hughes Tool Company guarantees that so long as this note shall remain outstanding and unpaid, the Company will faithfully observe, keep and perform the following covenants and conditions, the keeping and performing of which are promised as a consideration to induce the purchase of this note by the legal holder *10 thereof, said covenants, conditions and agreements and obligations being: * * * * * 4. The Company will not pay or advance to its stockholders, as dividends or otherwise, nor to its subsidiary companies except for the necessary regular business operations of such subsidiaries, more than one-half (1/2) of its net earnings before depreciation per quarter, over and above the sum of One Hundred Thousand Dollars ($100,000.00) per quarter, which said sum of One Hundred Thousand Dollars shall be set aside for the purposes of liquidating serially the notes of this series as they shall severally mature. On July 31, 1936, Texas transferred all of its properties and assets, subject to all of its debts, undertakings and liabilities, to Delaware, as a distribution in complete liquidation pursuant to section 112 (b) (6) (C) of the Revenue Act of 1936, and immediately thereafter Texas was dissolved. The liquidation and distribution was authorized by appropriate resolutions of the directors and stockholders of both corporations. The business of the dissolved corporation was carried on by Delaware with the same officers and employees and using the same offices and plant facilities. On September *11 30, 1936, Delaware transferred all of its properties and assets, subject to its debts, undertakings and liabilities, to petitioner as a distribution in complete liquidation pursuant to section 112 (b) (6) (C) of the Revenue Act of 1936, and promptly thereafter Delaware was dissolved. The liquidation and distribution was formally authorized by the directors and stockholders of both corporations. After the liquidation petitioner continued the operation of the business previously conducted by Delaware with the same officers and employees and using the transferred assets. By virtue of the above liquidations petitioner became the owner of the capital stock of the Hughes Tool Company of California, originally owned by Texas. On October 13, 1936, all properties and assets of the Hughes Tool Company of California, subject to its liabilities, were transferred to petitioner in complete liquidation, pursuant to the provisions of section 112 (b) (6) (C) of the Revenue Act of 1936. Independent Film Laboratories, Ltd., and Hughes Products Company, Ltd., were liquidated and dissolved and their assets transferred to petitioner, the final distribution being made in December 1936. The following *12 amounts of the indebtedness incurred by Texas on October 1, 1935, were outstanding on the dates indicated: July 31, 1936
$700,000
September 30, 1936
600,000
December 31, 1936
500,000
March 31, 1937
400,000
June 30, 1937
300,000
September 30, 1937
200,000
January 1, 1938
100,000
Petitioner's accounts and records were kept in such manner as to reflect the net results obtained from the operation of the assets and businesses taken over from the several liquidated corporations. Due to offsetting net losses sustained in some of the departments, petitioner's net income for each of the taxable years was derived largely from its operation of the properties owned by Texas on July 31, 1936, and by Hughes Tool Company of California on October 13, 1936. The petitioner, in the taxable year 1936, paid taxable dividends in the amount of $80,000, and $350,000 in 1937. Dividend paid credit was allowed by the respondent in the computation of the surtax on undistributed profits for the taxable year in which these amounts were paid. In computing petitioner's surtax on its undistributed profits under section 26 (c) (1) of the Revenue Act of 1936, the respondent denied any credit in the *13 years 1936 and 1937 on amounts withheld from distribution because of the covenants contained in the notes executed by Texas on October 1, 1935. In the respondent's deficiency notice for the year 1936 the reasons for the denial of credit were set forth in the following paragraph: Your contention that you should be allowed credit for a contract restricting dividend payments in the computation of surtax on undistributed profits imposed by section 14 of the Revenue Act of 1936 has been denied, as section 26 (c) (1) of the Revenue Act of 1936 provides that for the purposes of the credit a contract restricting dividend payments must be entered into by the taxpayer prior to May 1, 1936 and as you did not assume the liability under the contract for which credit is claimed until September 28, 1936 it is held the contract, for the purposes of the credit allowed by section 26 (c) of the Revenue Act of 1936, was not applicable to your corporation. The deficiency notice for the year 1937 set forth similar grounds for the denial of credit in that year. Opinion The issue here is solely one of law. Does the petitioner qualify under the provisions of section 26 (c) (1) of the Revenue Act of 1936? *14 [1] If it does not so qualify the respondent must be sustained. We think the petitioner is not here entitled to credit under that section. It did not "execute" the contract under which the credit is claimed and its assumption of the liability was subsequent to the critical date of May 1, 1936 specifically mentioned in that section. It has been definitely settled that this section is to be strictly construed. ; . The taxpayer must show exact compliance with its conditions. ; . *15 The contract containing the restrictive covenant was executed by the Texas subsidiary October 1, 1935. Petitioner does not argue and could not do so effectively that it was a party to its execution even on the theory of "adoption". See . However, that it execute the contract is one of the plain mandates of the statute. ; ; . See also Reg. 101, art. 27 (a)-3. It is not denied that there was a "merger" of the Texas corporation with the petitioner. Prior to the completion of the merger the two corporations were, in fact and in law, two distinct entities. Prior to the transfer of the assets and the assumption of the liabilities by the petitioner on September 30, 1936, it had no legal obligation under the contract of Texas restricting payment of dividends. Any liability restricting its payment of dividends became the petitioner's only by virtue of this new agreement effective as of September 30, 1936, *16 which was subsequent to the critical date of May 1, 1936. The petitioner earnestly contends that the statute should not be strictly construed under the facts disclosed by this record. It is suggested that as the Texas corporation would be entitled to credit under the statute, no valid reason exists for denying it to the petitioner. The fact is stressed that the economic group, headed by the petitioner at the date and execution of the notes, remained unchanged except in respect to the corporate forms of organization; that by the merger the petitioner became the owner of the same assets it had directly owned at all times. The effect, says the petitioner, is that there has been merely a simplification of organization through elision of corporate forms through nontaxable exchanges in an effort to eliminate topheavy corporate superstructures. Furthermore, it is pointed out that all of the petitioner's net income for the taxable years involved represented income of plant and property of the Texas corporation. Whatever logical appeal the petitioner's arguments present, we do not believe they justify us in deviating from the rule of strict interpretation laid down in the cases already cited *17 and many others. Until the rule is relaxed by a higher authority, we are bound to follow that rule. The petitioner relies upon the analogy of such cases as , and , in which it was held that under a merger of a subsidiary with the parent company, the latter was entitled to a deduction for unamortized bond discount and expense in respect to bonds issued by the subsidiary prior to the conveyance. Petitioner argues that the Metropolitan Edison and companion cases are authority for the proposition that in a liquidation such as is here disclosed the personality of the liquidating corporation is merged and continued in that of the surviving corporation and that the surviving corporation is in fact, for all purposes, the old corporation with no change in identity. Aside from any other frailties in this position, we do not think the language of the decisions in those cases supports the construction for which petitioner contends. We rejected that construction in , *18 in which we said of the court's opinion in Metropolitan Edison: * * * In these circumstances we do not believe that the Court's statement to the effect that if a transfer "has all the elements of a merger and comes within the principle that the corporate personality of the transferor is drowned in that of the transferee, * * * the continuing corporation may deduct unamortized bond discount * * *." is to be taken to mean that as a general rule the corporation resulting from a statutory merger or consolidation is, as a matter of law, the same taxable entity as its constituent companies. Moreover the facts here are quite different from those in Metropolitan Edison. That case involved the merger of two Pennsylvania corporations under the laws of a state which empowered the merged corporation to transfer to the surviving corporation any right or power which Pennsylvania had theretofore granted to the merged corporation. Here the personality which petitioner, a Delaware corporation, claims, is that of a corporation chartered under the laws of the State of Texas. That the State of Delaware is without authority to vest a corporation of its creation with the corporate rights and *19 franchises subject to grant only by the State of Texas, and granted by it to a corporation created under its laws, needs no argument. We are unwilling to accept the theory that petitioner, a Delaware corporation, is also a Texas corporation and has been given that status by reason of a transaction carried out between two Delaware corporations under the laws of that state. We perceive no ground that would justify our overruling the respondent's determination that the petitioner is not entitled to credit under section 26 (c) (1) of the Revenue Act of 1936, and respondent is sustained. Decisions will be entered under Rule 50. Footnotes
1. SEC. 26. CREDITS OF CORPORATIONS. In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax. - * * * * *
(c) Contracts Restricting Payment of Dividends. - (1) Prohibition on Payment of Dividends. - An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.↩